**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**
**(WILKES-BARRE)**

| | | |
|---|---|---|
| IN RE: | ) | |
| **VINCENT GRAHAM,** | ) | **CASE NO.: 5:23-bk-00162-MJC** |
| | ) | **CHAPTER 13** |
| DEBTOR. | ) | **JUDGE MARK J. CONWAY** |
| | ) | |
| **MCLP ASSET COMPANY, INC. AS SERVICER** | ) | |
| **FOR NEWREZ LLC D/B/A SHELLPOINT** | ) | |
| **MORTGAGE SERVICING** | ) | |
| | ) | |
| **MOVANT** | ) | |
| | ) | |
| **VINCENT GRAHAM, DEBTOR** | ) | |
| **AND JACK N ZAHAROPOULOS, TRUSTEE** | ) | |
| | ) | |
| **RESPONDENTS** | ) | |

<u>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**</u>

Date: November 10, 2023

/s/ Joshua I. Goldman
Joshua I. Goldman, Esq.
Pennsylvania Bar # 205047
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
josh.goldman@padgettlawgroup.com
*Counsel for Movant*

# IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA
### (WILKES-BARRE)

| | | |
|---|---|---|
| IN RE: | ) | |
| **VINCENT GRAHAM,** | ) | **CASE NO.: 5:23-bk-00162-MJC** |
| | ) | **CHAPTER 13** |
| **DEBTOR.** | ) | **JUDGE MARK J. CONWAY** |
| | ) | |
| **MCLP ASSET COMPANY, INC. AS SERVICER** | ) | |
| **FOR NEWREZ LLC D/B/A SHELLPOINT** | ) | |
| **MORTGAGE SERVICING** | ) | |
| | ) | |
| **MOVANT** | ) | |
| | ) | |
| **VINCENT GRAHAM, DEBTOR** | ) | |
| **AND JACK N ZAHAROPOULOS, TRUSTEE** | ) | |
| | ) | |
| **RESPONDENTS** | ) | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

**COMES NOW** MCLP Asset Company, LLC as servicer for NewRez LLC d/b/a Shellpoint Mortgage Servicing, hereinafter "Movant", through counsel, and respectfully moves this Court for an Order granting relief from the automatic stay provisions of 11 U.S.C. §362(a) with respect to collateral described as **283 Sheperd Avenue, Brooklyn, NY 11208** (hereinafter "Property") and as grounds therefore would show unto the Court the following:

1.    Vincent Graham (hereinafter "Debtor") filed a petition for relief under Title 11, Chapter 13 on January 26, 2023 and is pending with the Court.

2.    Jack N. Zaharopoulos (hereinafter "Trustee") was appointed the Chapter 13 Trustee and is a party in their official capacity only.

3.    Deceased Borrower, Roberta Graham, executed and delivered or otherwise obligated with respect to that certain Note, (hereinafter "Note") in the original principal amount of $467,500.00. Movant is an entity entitled to enforce the Note. A true and correct copy of the Note is attached hereto as Exhibit "A".

4.    The Mortgage was recorded on March 30, 2007, as Instrument #2007000164840

in the Office of the City Register of the City of New York. A True and correct copy of the Mortgage is attached hereto as Exhibit "B".

5.     The Mortgage was secured as a Lien against the property located in King County, commonly known as a **283 Sheperd Avenue, Brooklyn, NY 11208**.

6.     The Loan was lastly assigned to MCLP Asset Company, Inc., as Servicer for NewRez LLC d/b/a Shellpoint Mortgage Servicing and the Assignment was recorded on March 22, 2023, in the Office of the City Register of the City of New York, as Instrument 2023000072917. A True and correct copy of the Assignment are attached hereto as Exhibit "C".

7.     The Property is not listed in Debtor's schedules and Amended Chapter 13 Plan. A True and correct copy of the Chapter 13 Plan is attached hereto as Exhibit "D".

8.     As of October 24, 2023, the monthly payments for the months of February 1, 2023 through November 1, 2023 for an arrearage of $33,238.53.

9.     Thus, as of October 24, 2023, post-petition is $33.238.53 A Post-Petition Payment Ledger is attached hereto as Exhibit "E".

10.     As of October 24, 2023, the principal balance owed is $466,803.85. Movant's total claim amount is itemized below is approximately $1,175,825.37. A Payoff Statement is attached hereto as Exhibit "F".

| | |
|---|---|
| Principal Balance | $466,80.85 |
| Interest (through 10/24/2023) | $579,632.85 |
| Fees | $34,835.88 |
| Funds owed by Borrower | $99,135.15 |
| Funds owed to Borrower | ($4,582.02) |

| Deferred Principal | $ 0.00 |
|---|---|
| Total Payoff | $1,175,825.37 |

11.     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant will incur $1,050.00 in legal fees and $188.00 in costs. Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

12.     As set forth herein, Debtors has defaulted on the secured obligation as Debtors have failed to make the monthly post-petition installment payments.

14     As a result, cause exists pursuant to 11 U.S.C. §362 (d) of the Code for this Honorable Court to grant relief from the automatic stay to allow Secured Creditor, its successor and/or assignees to pursue its state court remedies, including the filing of a foreclosure action.

15.     Additionally, once the stay is terminated, Debtor will have minimal motivation to insure, preserve or protect the collateral; therefore, Movant request that the Court waive the 14-day stay period imposed by Fed R. P. 4001 (a)(3).

16.     NewRez LLC dba Shellpoint Mortgage Servicing, services the underlying mortgage loan and note for the property referenced in this motion for Movant. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is endorsed in blank. Movant is the beneficiary or the assignee of the Deed of Trust.

WHEREFORE, Movant prays that an Order be entered modifying the Stay and permitting Movant to proceed with its mortgage foreclosure on the mortgaged premises, and to allow the Sheriff's Grantee to take any legal action to enforce its right to possession of the mortgage premises. Further, Movant prays that an Order be entered awarding Movant the costs of this suit, reasonable attorney's fees in accordance with the mortgage document and current law together with interest.

Respectfully Submitted,

/s/ Joshua I. Goldman
Joshua I. Goldman, Esq.
Pennsylvania Bar # 205047
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
josh.goldman@padgettlawgroup.com
*Counsel for Movant*

# NOTE

October 17, 2006        BREA        CA 92821
[Date]        [City]        [State]

283 SHEPERD AVE, Brooklyn, NY 11208

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 467,500.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Fremont Investment & Loan

I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.900 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS** ** SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on December 01, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on November 01, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2727 East Imperial Highway, Brea, CA 92821
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 3,138.94

**4. BORROWER'S RIGHT TO PREPAY** ** SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-5N (0207).01      Form 3200 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3      Initials: _____

## EXHIBIT A

Original Note & Riders

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000     % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 3200 1/81

Initials: _R.G._

-5 N (9207).01                Page 2 of 3



**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

** SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **
** SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)    _____ (Seal)
ROBERTA GRAHAM                     -Borrower                                      -Borrower

_____ (Seal)    _____ (Seal)
                                   -Borrower                                      -Borrower

_____ (Seal)    _____ (Seal)
                                   -Borrower                                      -Borrower

_____ (Seal)    _____ (Seal)
                                   -Borrower                                      -Borrower

*[Sign Original Only]*

-5N (0207).01                          Page 3 of 3                          Form 3200 1/01

Pay to the order of RESIDENTIAL FUNDING COMPANY, LLC
without recourse.

Fremont Investment & Loan
Doug Pollock
Assistant Vice President

# PREPAYMENT RIDER TO NOTE

THIS PREPAYMENT RIDER is made this 17th day of October, 2006, and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") to:

Fremont Investment & Loan

(the "lender") of the same date and covering the property located at:

283 SHEPERD AVE, Brooklyn, NY 11208

(Property Address)

## BORROWER'S RIGHT TO PREPAY

### This Prepayment Rider Supersedes Section 4 of the Note

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full or partial prepayment; however, the Note Holder may charge me for the privilege of prepayment. If more than 20% of the original principal amount of this note is prepaid in any 12-month period within [ 1 Year ] after the date of this loan, I agree to pay a prepayment charge equal to six months interest on the amount prepaid which is in excess of 20% of the original principal amount of this Note. If I make a prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make full prepayment at any time. If I choose to make a partial prepayment the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of the principal that would have been part of my next one or more monthly payments.

_Roberta Graham_ 10/17/06
ROBERTA GRAHAM      Date                                 Date

_____ Date                                   Date

_____ Date                                   Date

_____ Date                                   Date

# Balloon Payment Rider to Note
## (Fixed Rate)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN, TOGETHER WITH ALL UNPAID INTEREST AND LOAN CHARGES THEN DUE, IN A SINGLE BALLOON PAYMENT. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THIS LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY HIGHER INTEREST RATES ON THE NEW LOAN THAN THE INTEREST RATE PAID ON THIS LOAN. FURTHER, IF YOU REFINANCE, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

THIS BALLOON PAYMENT RIDER TO NOTE (the "Note Rider") is made this 17th day of October, 2006 , and is incorporated into and shall be deemed to amend and supplement the Note (the "Note") made by the undersigned (the "Borrower") in favor of Fremont Investment & Loan (the "Lender") and dated the same date as this Note Rider.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

1. **Payments**
   Section 3 of the Note is modified, amended and supplemented to read, in its entirety, as follows:
   "3. **PAYMENTS**

   (A) **Time and Place of Payments**
   I will pay principal and interest by making a payment every month.
   I will make my monthly payment on the first day of each month beginning on 12/01/2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. On November 01, 2036 (which is called the "Maturity Date"), I will pay the entire unpaid Principal balance of this Note, together with all accrued but unpaid interest and all charges due under this Note, in a single payment (the "Balloon Payment"). I understand and acknowledge that the Balloon Payment due on the Maturity Date will be much larger than a regular monthly payment and that the Note Holder has no obligation to refinance the Balloon Payment.

   I will make my monthly payments at 2727 East Imperial Highway, Brea, CA 92821 or at a different place if required by the Note Holder.

   (B) **Amount of Monthly Payments**
   My monthly payment will be in the amount of U.S. $ 3,138.94 ."

2. **Effect of Note Rider**
   This Note Rider modifies, amends and supplements the Note. To the extent of any inconsistency between the provisions of this Note Rider and the provisions of the Note, the provisions of this Note Rider shall prevail over and supersede the inconsistent provisions of the Note. Except as modified, amended or supplemented by this Note Rider, the Note shall remain in full force and effect.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Payment Rider to Note.

_____ (Seal)          _____ (Seal)
ROBERTA GRAHAM           - Borrower                                              - Borrower

_____ (Seal)          _____ (Seal)
                         - Borrower                                              - Borrower

_____ (Seal)          _____ (Seal)
                         - Borrower                                              - Borrower

_____ (Seal)          _____ (Seal)
                         - Borrower                                              - Borrower

BALFIXN1 06/23/06                                                      [Sign Original Only]

## ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

POOL: 0     LOAN ID: █████ ████████████████████

NOTE DATE: 10/17/2006    LOAN AMOUNT:    $467,500.00

BORROWER NAME: ROBERTA E GRAHAM

PROPERTY ADDRESS: 283 SHEPERD AVE, BROOKLYN, NY 11208

···············································································································································

PAY TO THE ORDER OF

**LNV Corporation**

WITHOUT RECOURSE

Residential Funding Company, LLC

By: *[signature]*

Name: Jason J. Vecchio

Title: Post Funding Manager

Residential Funding Company, LLC

Pool: 111
Investor No: 
Term Digit:

**NOTE ALLONGE**


     This Allonge is affixed to and made a part of that certain NOTE made by ROBERTA GRAHAM in the original principal amount of $467,500.00 dated 10/17/2006 and payable to the order of the FREMONT INVESTMENT & LOAN, as renewed, extended, amended or modified (the "Note").

     Pay to the order of _____ ("Assignee"), without recourse and without representation or warranty, whether express, implied or created by operation of law.


LNV CORPORATION


By: _____
Name: JAMES ERWIN
Title: SENIOR VICE PRESIDENT





EXHIBIT B

**(E) "Note."** The note signed by Borrower and dated October 17, 2006                , will be called the "Note." The Note shows that I owe Lender Four Hundred Sixty-Seven Thousand Five Hundred and 0/100ths

                                        Dollars (U.S. $467,500.00                                )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by November 01, 2036

**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O).** "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q)** "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Initials: _RG_

VMP-6A(NY) (0508)                    Page 2 of 17                    Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 283 SHEPERD AVE

[Street]

Brooklyn    [City, Town or Village], New York  11208 [Zip Code].
This Property is in Kings                        County. It has the following legal
description: SEE ATTACHED LEGAL

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

Initials: _R.G._

-6A(NY) (0508)                        Page 3 of 17                                Form 3033 1/01

ALL that certain plot, piece or parcel of land, situate lying and being in the County of Kings, State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Shepherd Avenue, Distant 311 feet 6 inches from the northeast corner of Shepherd Avenue and Liberty Avenue;

RUNNING THENCE easterly parallel with liberty Avenue and part of the distance through a party wall, 100 feet;

THENCE northerly parallel with Shepherd Avenue, 19 feet 6 inches;

THENCE westerly parallel with Liberty Avenue, 100 feet to the Easterly side of Shepherd Avenue;

THENCE southerly along the easterly side of Shepherd Avenue, 19 feet 6 inches to the point or place of BEGINNING.

Block: 3973 Lot: 14.

Premises being known as 283 Shepherd Avenue, Brooklyn, NY 11208.

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

-6A(NY) (0505)     Page 4 of 17     Initials: _____     Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

Initials: _PBG_

Case 5:23-bk-00162-MJC     Doc 49     Filed 11/10/23     Entered 11/10/23 17:35:16     Desc
Main Document     Page 21 of 66

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

. . If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me; my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

. . . The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

Initials: _P.G._

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

Initials: *R.G.*

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

-6A(NY) (0508)          Page 12 of 17          Initials: _____          Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

Initials: _R.G._

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

Case 5:23-bk-00162-MJC    Doc 49    Filed 11/10/23    Entered 11/10/23 17:35:16    Desc
Main Document    Page 30 of 66

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☒ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

Initials: _RG_

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          *Roberta Graham* _____(Seal)
                                          ROBERTA GRAHAM                -Borrower


_____          _____(Seal)
                                                                       -Borrower


_____(Seal)         _____(Seal)
Witness                    -Borrower                                  -Borrower


_____(Seal)         _____(Seal)
                           -Borrower                                  -Borrower


_____(Seal)         _____(Seal)
                           -Borrower                                  -Borrower

**STATE OF NEW YORK,**                                    County ss: Kings

On the 17th day of October, 2006 before me, the undersigned, a notary public in and for said state, personally appeared

Roberta Graham

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

*Lisa Pareres*

Notary Public

Tax Map Information:

Notary Public, State of New York
Lisa Pareres
No. 01PA6103776
Qualified in Westchester County
Commission Expires Jan. 12, 20__

**SEAL**

Initials: *R.G.*

-6A(NY) (0366)                    Page 17 of 17                    Form 3033 1/01

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 17th    day of October, 2006
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to Fremont Investment & Loan

    (the

"Lender") of the same date and covering the Property described in the Security Instrument
and located at: 283 SHEPERD AVE, Brooklyn, NY 11208

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations
and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

**MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3170 1/01

-57R (0411)
Page 1 of 3    Initials:
VMP Mortgage Solutions, Inc.
(800)521-7291

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

-57R (0411)                    Page 2 of 3                    Initials: _R.G._

                                                             Form 3170 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
ROBERTA GRAHAM                  -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower


VMP-57R (0411)                        Page 3 of 3                        Form 3170 1/01

# BALLOON PAYMENT RIDER
## (FIXED RATE)

THIS BALLOON PAYMENT RIDER (the "Security Instrument Rider") is made this 17th day of October, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to Fremont Investment & Loan ("Lender") of the same date and covering the property described in the Security Instrument and located at:

283 SHEPERD AVE, Brooklyn, NY 11208
[Property Address]

**THE NOTE IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE NOTE, TOGETHER WITH ALL UNPAID INTEREST AND LOAN CHARGES THEN DUE, IN A SINGLE BALLOON PAYMENT. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE NOTE AT THAT TIME. BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER NAMED IN THE NOTE, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THE NOTE AT MATURITY, BORROWER MAY HAVE TO PAY HIGHER INTEREST RATES ON THE NEW LOAN THAN THE INTEREST RATE PAID ON THE NOTE. FURTHER, IF BORROWER REFINANCES, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**1. Payments**

Borrower has executed a Balloon Payment Rider to Note (the "Note Rider") dated the same date as this Security Instrument Rider. The Note Rider modifies, amends, and supplements Section 3 of the Note to read, in its entirety, as follows:

BALFIXR1 01/03/06 Page 1 of 2

**"3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on 12/01/2006 . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. On November 01, 2036 (which is called the "Maturity Date"), I will pay the entire unpaid Principal balance of this Note, together with all accrued and unpaid interest and all charges due under this Note, in a single payment (the "Balloon Payment"). I understand and acknowledge that the Balloon Payment due on the Maturity Date will be much larger than a regular monthly payment and that the Note Holder has no obligation to refinance the Balloon Payment.

I will make my monthly payments at 2727 East Imperial Highway, Brea, CA 92821 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 3,138.94 ."

**2. Effect of Note Rider**

This Note Rider modifies, amends and supplements the Note. To the extent of any inconsistency between the provisions of this Note Rider and the provisions of the Note, the provisions of this Note Rider shall prevail over and supersede the inconsistent provisions of the Note. Except as modified, amended or supplemented by this Note Rider, the Note shall remain in full force and effect.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Payment Rider to Note.

_____ (Seal)          _____ (Seal)
ROBERTA   GRAHAM          - Borrower                                          - Borrower


_____ (Seal)          _____ (Seal)
                                        - Borrower                                          - Borrower


_____ (Seal)          _____ (Seal)
                                        - Borrower                                          - Borrower


_____ (Seal)          _____ (Seal)
                                        - Borrower                                          - Borrower

[Sign Original Only]

BALFIXR2  01/03/06                    Page 2 of 2

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2008073000970001001EFF73

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2008073000970001 | Document Date: 05-12-2008 | Preparation Date: 07-30-2008 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| FIRST AMERICAN TITLE INSURANCE | FIRST AMERICAN TITLE INSURANCE |
| 1225 JEFFERSON ROAD SUITE A01 | 1225 JEFFERSON ROAD SUITE A01 |
| 2060-243317 | 2060-243317 |
| ROCHESTER, NY 14623 | ROCHESTER, NY 14623 |
| 585-760-2020 | 585-760-2020 |
| glestorti@firstam.com | glestorti@firstam.com |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 3973 | 14 | Entire Lot | 283 SHEPHERD AVENUE |

**Property Type:** DWELLING ONLY - 1 FAMILY

## CROSS REFERENCE DATA

**CRFN:** 2007000164840

## PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. | RESIDENTIAL FUNDING COMPANY, LLC |
| 2727 EAST IMPERIAL HIGHWAY | 4828 LOOP CENTRAL DRIVE |
| BREA, CA 92821 | HOUSTON, TX 75040 |

## FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | | |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | | |
| Spec (Additional): | $ | 0.00 | | $ | 0.00 |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed 08-05-2008 13:10
City Register File No.(CRFN):
**2008000310343**

*Annette M. Hill*

**City Register Official Signature**

```
Prepared By &
When Recorded Return to:                    Section:
The Law Offices of Jordan S. Katz, P.C.         Block:      3973
395 N. Service Road, Suite 401,
Melville, NY 11747                          Lot:           14

                                           County:     KINGS

Our File:        ███████
Loan No.
```

## ASSIGNMENT OF MORTGAGE

KNOW THAT **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FREMONT INVESTMENT AND LOAN**, Assignor, a corporation or association which exists under the laws of New York and having its principal place of business 2727 East Imperial Highway, Brea, Ca 92821.

in consideration of One and no/100 ($1.00) Dollars paid by:

RESIDENTIAL FUNDING COMPANY, LLC Assignee, having its principal place of business, 4828 LOOP CENTRAL DRIVE, HOUSTON, TX 75040 hereby assigns unto the assignee, a certain mortgage made by ROBERTA GRAHAM to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FREMONT INVESTMENT AND LOAN,** given to secure payment of the sum of Four Hundred Sixty-Seven Thousand Five Hundred Dollars and No Cents and interest, dated October 23, 2006, recorded on March 30, 2007, in the Office of the Clerk of the County of KINGS in CRFN: 2007000164840, covering premises: 283 SHEPERD AVENUE A/K/A SHEPHERD AVENUE, BROOKLYN, NY 11208 (SEE EXHIBIT A, ATTACHED, FOR LEGAL DESCRIPTION).

Together with the bond or obligation described in said mortgage, and the moneys due to grow due thereon with interest.

TO HAVE AND TO HOLD, the same unto the assignee, and to the successors, legal representatives and assigns of the assignee forever.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Assignment is made to and accepted by the Assignee without warranty or representation on the part of the assignor and without recourse to the assignor in any event whatsoever.

EXHIBIT C

IN WITNESS WHEREOF, the Assignor has duly executed the Assignment
on **MAY 1 2 2008** _____, 2008

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR
FREMONT INVESTMENT AND LOAN

BY: _____

Marti Noriega

Vice President

STATE OF _Texas_ )
                  ) ss.:
COUNTY OF _Dennis_ )

On the **MAY 1 2 2008** day of _____ in the year 2008 before me,
the undersigned, personally appeared _____Marti Noriega_____
personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s) is (are) subscribed to
the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their capacity(ies), that by his/her/their
signature(s) in the instrument, the individual(s) or the person upon
behalf of which the individual(s) acted, executed the instrument, and
that such individual made such appearance before the undersigned in
the City of _Houston_____, State of _Texas_____.

_____
NOTARY PUBLIC

**SEAL**

ALVIN L DENMON
Notary Public, State of Texas
My Commission Expires
March 28, 2011



## SCHEDULE A

## DESCRIPTION OF MORTGAGED PREMISES

**Title N** 

ALL that certain plot, piece or parcel of land, situate lying and being in the County of Kings, State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Shepherd Avenue, Distant 311 feet 6 inches from the northeast corner of Shepherd Avenue and Liberty Avenue;

RUNNING THENCE easterly parallel with liberty Avenue and part of the distance through a party wall, 100 feet;

THENCE northerly parallel with Shepherd Avenue, 19 feet 6 inches;

THENCE westerly parallel with Liberty Avenue, 100 feet to the Easterly side of Shepherd Avenue;

THENCE southerly along the easterly side of Shepherd Avenue, 19 feet 6 inches to the point or place of BEGINNING.



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2008072300079001001EB866

| | | |
|---|---|---|
| **Document ID:** 2008072300079001 | Document Date: 03-10-2008 | Preparation Date: 07-23-2008 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| MGC MORTGAGE INC. | MGC MORTGAGE INC. |
| 7195 DALLAS PARKWAY | 7195 DALLAS PARKWAY |
| DOCUMENT CONTROL BC613487 | DOCUMENT CONTROL BC613487 |
| PLANO, TX 75024 | PLANO, TX 75024 |
| 469-229-8688 | 469-229-8688 |
| jevans@mgcmortgage.com | jevans@mgcmortgage.com |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 3973 | 14 | Entire Lot | 283 SHEPHERD AVENUE |

**Property Type:** DWELLING ONLY - 3 FAMILY

## CROSS REFERENCE DATA

**Document ID:** 2006112800966001

## PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| (MERS) MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, I | LNV CORPORATION |
| 1595 SPRING HILL RD, STE 310 | 7195 DALLAS PARKWAY |
| VIENNA, VA 22182 | PLANO, TX 75024 |

## FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | | |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | | |
| Spec (Additional): | $ | 0.00 | | $ | 0.00 |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed      08-08-2008 16:08
City Register File No.(CRFN):
         **2008000317712**

*Annette M. Hill*

***City Register Official Signature***

Dated: 3/10/2008        CORPORATION ASSIGNMENT of MORTGAGE

MIN: ███████        MERS Phone: 1-888-679-6377

**FOR VALUE RECEIVED, '(MERS) Mortgage Electronic Registration Systems, Inc.'**

**1595 Spring Hill Road, Suite 310, Vienna, VA 22182**

the undersigned hereby grants, assigns and transfers to

LNV Corporation
7195 Dallas Parkway
Plano, Texas 75024

all beneficial interest under that certain Mortgage dated 10/17/2006
executed by ROBERTA ʃ GRAHAM

TO/FOR: Fremont Investment & Loan

                                          2006112800966001

and recorded in Book _N\A_ on Page _N\A_ as Instrument No. _^_ on _3-30-07_
of official Records in the County Recorder's Office of KINGS County, New York.

**PROPERTY ADDRESS:** 283 SHEPERD AVE, BROOKLYN, NY 11208

**Mortgage Amount:** $467,500.00

**This assignment is not subject to the requirement of section 275 of the real property law because it is an assignment within the secondary mortgage market.**

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

                            **'(MERS) Mortgage Electronic Registration Systems, Inc.'**

                            BY: _____

                            NAME: Michael Mead

Prepared by Diane Meistad, Residential Funding       TITLE: Assistant Vice President
Company, LLC, One Meridian Crossings, Suite 100, _____
Minneapolis, MN 55423, (952) 979-4000.

Parcel I.D. Number:

Section: 13

Block: 3973

Lot: 14

Town:

## IN STATE ACKNOWLEDGEMENT

STATE OF                                 New York)
COUNTY OF

On 3/10/2008 before me, the undersigned, personally appeared Michael Mead, Assistant Vice President of '(MERS) Mortgage Electronic Registration Systems, Inc.' personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public in and for said State

## OUT OF STATE ACKNOWLEDGEMENT

STATE OF                                 Minnesota)
COUNTY OF                            Hennepin)

On 3/10/2008 before me, the undersigned, personally appeared Michael Mead, Assistant Vice President of '(MERS) Mortgage Electronic Registration Systems, Inc.' personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person upon behalf of which the individual acted, executed the instrument and that such individual made such appearance before the undersigned in the city of_____, state of
_____.



Notary Public in and for said State

DUANE M. MESTAD
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2009

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2010012900779001001E549F

**RECORDING AND ENDORSEMENT COVER PAGE**      **PAGE 1 OF 5**

| | |
|---|---|
| Document ID: **2010012900779001** | Document Date: 01-28-2010    Preparation Date: 01-29-2010 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| MGC MORTGAGE INC | MGC MORTGAGE INC |
| 7195 DALLAS PARKWAY | 7195 DALLAS PARKWAY |
| PLANO, TX 75024 | PLANO, TX 75024 |
| 469-226-8634 | 469-226-8634 |
| mbarnett@mgcmortgage.com | mbarnett@mgcmortgage.com |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 3973 | 14 | Entire Lot | 283 SHEPHERD AVENUE |

**Property Type:** DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

CRFN: 2007000164840

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| RESIDENTIAL FUNDING COMPANY, LLC FKA | LNV CORPORATION |
| ONE MERIDIAN CROSSINGS, SUITE 100 | 7195 DALLAS PARKWAY |
| MINNEAPOLIS, MN 55423 | PLANO, TX 75024 |

  x  Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK**

Recorded/Filed      02-03-2010 10:04
City Register File No.(CRFN):
     **2010000038510**

*Annette M. Hill*

***City Register Official Signature***



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2010012900779001001C561F

Document ID: 2010012900779001     Document Date: 01-28-2010     Preparation Date: 01-29-2010
Document Type: ASSIGNMENT, MORTGAGE

**PARTIES**
**ASSIGNOR/OLD LENDER:**
RESIDENTIAL FUNDING CORPORATION, LLC
ONE MERIDIAN CROSSINGS, SUITE 100
MINNEAPOLIS, MN 55423

This Document Prepared By and
After Recording Please Return To:
**MGC MORTGAGE, INC.**
Attn: Carissa Golden, Manager
Post Closing/Lien Closing
7195 Dallas Parkway
Plano, TX 75024

---

# CORRECTIVE ASSIGNMENT OF MORTGAGE
*(This assignment is being recorded to correct the assignor and assignee on the previous assignment which was recorded in error on August 8, 2008. CRFN No. 2008000317712).*

**Grantor:** **RESIDENTIAL FUNDING COMPANY, LLC fka RESIDENTIAL FUNDING CORPORATION, LLC.**
**One Meridian Crossings, Suite 100, Minneapolis, MN 55423**

**Grantee:** **LNV CORPORATION**
**7195 Dallas Parkway, Plano, Texas 75024**

**Property Address:** **283 Sheperd Avenue, Brooklyn, NY 11208**

**Legal Description:**

ALL that certain plot, piece or parcel of land, situate lying and being in the County of Kings, State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Shepherd Avenue, Distant 311 feet 6 inches from the northeast corner of Shepherd Avenue and Liberty Avenue;

RUNNING THENCE easterly parallel with liberty Avenue and part of the distance through a party wall, 100 feet;

THENCE northerly parallel with Shepherd Avenue, 19 feet 6 inches;

THENCE westerly parallel with Liberty Avenue, 100 feet to the Easterly side of Shepherd Avenue;

THENCE southerly along the easterly side of Shepherd Avenue, 19 feet 6 inches to the point or place of BEGINNING.

█████████

1

## CORRECTIVE ASSIGNMENT OF MORTGAGE

*(This assignment is being recorded to correct the assignor and assignee on the previous assignment which was recorded in error on August 8, 2008. CRFN No. 2008000317712).*

THIS ASSIGNMENT OF MORTGAGE (this "Assignment") is made by RESIDENTIAL FUNDING COMPANY, LLC fka RESIDENTIAL FUNDING CORPORATION, LLC whose address is One Meridian Crossings, Suite 100, Minneapolis, Minnesota 55423 ("Assignor"), to and in favor of LNV CORPORATION, whose address is 7195 Dallas Parkway, Plano, Texas 75024 ("Assignee"), pursuant to the terms of that certain Amended and Restated Flow Mortgage Loan Purchase and Interim Servicing Agreement, (the "Purchase Agreement"), effective March 27, 2008, between RESIDENTIAL FUNDING COMPANY, LLC and LOAN ACQUISITION CORPORATION.

THIS ASSIGNMENT WITNESSES THAT, in consideration of Ten Dollars ($10.00) and other good and valuable consideration paid by Assignee, Assignor hereby assigns, transfers, sets over and conveys to Assignee and its successors and assigns, without recourse and without representation or warranty, whether express, implied or created by operation of law, except as expressly set forth in the Purchase Agreement, the following:

1.  that certain Mortgage from Roberta Graham, dated October 17, 2006, and recorded March 30, 2007, as CRFN No. 2007000164840, in the Clerk's Office of the County of Kings, State of New York, (the "Mortgage"), which Mortgage secures that certain Promissory Note dated October 17, 2006, in the original principal amount of $467,500.00.00, executed by Roberta Graham and payable to the order of Fremont Investment & Loan, as modified or amended (the "Note");

    Legal Description: Section: 13, Block: 3973, Lot: 14, Borough of Brooklyn

2.  Assigned to Residential Funding Corporation, LLC by an assignment recorded on August 5, 2008, as CRFN No. 2008000310343, in the Clerk's Office of the County of Kings, State of New York.

3.  such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor's right, title or interest in and to the Mortgage and/or the Note and/or the loan evidenced by the Note, including without limitation the title insurance policies and hazard insurance policies relating thereto that are in effect.

**This assignment is no subject to the requirements of section 275 of the real property law because it is an assignment within the secondary market.**

2

**IN WITNESS WHEREOF,** Assignor has caused this Assignment to be executed and delivered by its Authorized Representative as of the 28th___ day of January, 2010.

RESIDENTIAL FUNDING COMPANY, LLC fka RESIDENTIAL FUNDING CORPORATION, LLC

*Patricia Kelleher*
_____
PATRICIA KELLEHER, LIMITED SIGNING OFFICER

## ACKNOWLEDGMENT

| STATE OF IOWA | § |
|---|---|
| | § |
| COUNTY OF BLACK HAWK | § |

Before me, the undersigned, a Notary Public, on this day personally appeared Patricia Kelleher, who is personally well known to me (or sufficiently proven) to be the Limited Signing Officer of Residential Funding Company, LLC fka Residential Funding Corporation, LLC. and the person who executed the foregoing instrument by virtue of the authority vested in him/her, and he/she acknowledged to me that he/she executed the same for the purposes and consideration therein expressed and in the capacities therein stated.

Given under my hand and seal this 28th day of January, 2010.

**SEAL**

*Sally Nelson*
_____
Sally Nelson
Notary in and for said County and State
My commission expires:  4/20/2011

> SALLY NELSON
> Notarial Seal - Iowa
> Commission # 222056
> My Commission Expires 4-20-11

3

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2023032200610001001E65BD

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 2 |
|---|---|

**Document ID:** 2023032200610001     Document Date: 03-20-2023     Preparation Date: 03-22-2023
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 1

| PRESENTER: | RETURN TO: |
|---|---|
| CORPORATION SERVICE COMPANY (CSC)<br>801 STEVENSON DRIVE<br>SPRINGFIELD, IL 62703 | CORPORATION SERVICE COMPANY (CSC)<br>801 STEVENSON DRIVE<br>SPRINGFIELD, IL 62703 |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 3973 | 14 | Entire Lot | 283 SHEPHERD AVENUE |

**Property Type:** DWELLING ONLY - 3 FAMILY

## CROSS REFERENCE DATA

**CRFN:** 2007000164840

## PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| LNV CORPORATION<br>7195 DALLAS PKWY<br>PLANO, TX 75024 | MCLP ASSET COMPANY, INC.<br>2001 ROSS AVE, SUITE 2800<br>DALLAS, TX 75201 |

## FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 42.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed     03-22-2023 15:48
City Register File No.(CRFN):
**2023000072917**

*Annette M Hill*
*City Register Official Signature*

Record and Return To:
Document Recording Services
P.O. Box 3008
Tallahassee, FL 32315-3008

**Recording Requested By:**
CLMG Corp

Investor Loan # 
Pool #:

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, **LNV CORPORATION**, **7195 DALLAS PKWY, PLANO, TX 75024**, herein ("Assignor"), does hereby grant, assign, transfer and convey, without recourse unto **MCLP ASSET COMPANY, INC., 2001 ROSS AVE, SUITE 2800  DALLAS, TX 75201**, herein ("Assignee") the loan document(s) identified herein, including all of Assignor's loan documents, including documents in possession of Assignor pertaining to the loan as evidenced by the Note, and including but not limited to, any loan agreements, guarantees, security agreements, any amendments of supplements and modification thereto, all affidavits and certificates, tenant estoppel certificates and/or subordinations, general credit information, including letters of credit, credit records from Assignor, payment histories, signed loan applications, appraisals, property insurance policies, certificates of mortgage insurance, title insurance policies, escrow accounts and attorney's opinions.

Original Document(s) to be assigned:
Borrower: **ROBERTA GRAHAM**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FREMONT INVESTMENT & LOAN**
Dated: **10/17/2006** Recorded: **03/30/2007** Instrument: **2007000164840** in Kings County, NY Loan Amount: **$467,500.00**
Block: **3973** Lot: **14**

**ASSIGNMENT** Recorded: **08/05/2008** as Instrument No.: **2008000310343** Assignor: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FREMONT INVESTMENT & LOAN** Assignee: **RESIDENTIAL FUNDING COMPANY, LLC**

**ASSIGNMENT** Recorded: **08/08/2008** as Instrument No.: **2008000317712** Assignor: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** Assignee: **LNV CORPORATION**

**CORRECTIVE ASSIGNMENT** Recorded: **02/03/2010** as Instrument No.: **2010000038510** Assignor: **RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION, LLC** Assignee: **LNV CORPORATION**

**This mortgage has not been further assigned**

Subject to the right and equity of redemption, if any there be of said mortgagor and its heirs and assigns in the same.

**This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.**

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described instrument(s).

IN WITNESS WHEREOF, Assignor has caused this assignment to be executed and delivered, effective __3/20/2023__ .

**LNV CORPORATION**

By: _____
Name: **JAMES ERWIN**
Title: **SENIOR VICE PRESIDENT**

STATE OF **Texas**
COUNTY OF **COLLIN**  } s.s.

On __March 20, 2023__, before me, the undersigned Notary Public, personally appeared, **JAMES ERWIN, SENIOR VICE PRESIDENT** of **LNV CORPORATION**, personally known to me to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Witness my hand and official seal.

_Ruth B. Harrison_
Notary Public: **RUTH B. HARRISON**
My Commission Expires: **04/29/2025**
Commission #: **126879984**

Ruth B Harrison
My Commission Expires
04/29/2025
ID No. 126879984

## LOCAL BANKRUPTCY FORM 3015-1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:
**Vincent Graham,**

**CHAPTER:** 13

**CASE NO.** 5:23-bk-00162-MJC

**Debtor(s)**

☒ ORIGINAL PLAN
   AMENDED PLAN (indicate #)

**0** Number of Motions to Avoid Liens

**0** Number of Motions to Value Collateral

## CHAPTER 13 PLAN

### NOTICES

Debtors must check one box on each line to state whether or not the plan includes each of the following items. If an item is checked as "Not Included" or if both boxes are checked or if neither box is checked, the provision will be ineffective if set out later in the plan.

| 1 | The plan contains nonstandard provisions, set out in § 9, which are not included in the standard plan as approved by the U.S. Bankruptcy Court for the Middle District of Pennsylvania. | ☐ Included | ☒ Not Included |
|---|---|---|---|
| 2 | The plan contains a limit on the amount of a secured claim, set out in § 2.E, which may result in a partial payment or no payment at all to the secured creditor. | ☐ Included | ☒ Not Included |
| 3 | The plan avoids a judicial lien or nonpossessory, nonpurchase- money security interest, set out in § 2.G | ☐ Included | ☒ Not Included |

### YOUR RIGHTS WILL BE AFFECTED

READ THIS PLAN CAREFULLY. If you oppose any provision of this plan, you must file a timely written objection. This plan may be confirmed and become binding on you without further notice or hearing unless a written objection is filed before the deadline stated on the Notice issued in connection with the filing of the plan.

EXHIBIT D

1. **PLAN FUNDING AND LENGTH OF PLAN.**

   A. **Plan Payments From Future Income**

   1. To date, the Debtor paid $ 0.00 (enter $0 if no payments have been made to the Trustee to date). Debtor shall pay to the Trustee for the remaining term of the plan the following payments. If applicable, in addition to monthly plan payments, Debtor shall make conduit payments through the Trustee as set forth below. The total base plan is $ 79,500.00 plus other payments and property stated in § 1B below:

| Start mm/yyyy | End mm/yyyy | Plan Payment | Estimated Conduit Payment | Total Monthly Payment | Total Payment Over Plan Tier |
|---|---|---|---|---|---|
| 02/2023 | 01/2028 | $1,325.00 | $0.00 | $1,325.00 | $79,500.00 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  | Total Payments: | $79,500.00 |

   2. If the plan provides for conduit mortgage payments, and the mortgagee notifies the Trustee that a different payment is due, the Trustee shall notify the Debtor and any attorney for the Debtor, in writing, to adjust the conduit payments and the plan funding. Debtor must pay all post-petition mortgage payments that come due before the initiation of conduit mortgage payments.

   3. Debtor shall ensure that any wage attachments are adjusted when necessary to conform to the terms of the plan.

   4. *Check One:*
        ☑ Debtor is at or under median income.

   B. **Additional Plan Funding From Liquidation of Assets/Other**

   1. The Debtor estimates that the liquidation value of this estate is $ 70,690.16. (Liquidation value is calculated as the value of all non- exempt assets after the deduction of valid liens and encumbrances and before the deduction of Trustee fees and priority claims.)

   *Check one of the following two lines:*

2

☒   No assets will be liquidated. *If this is checked, skip § 1.B.2 and complete § 1.B.3 if applicable.*

☐   Certain assets will be liquidated as follows:

2.  In addition to the above specified plan payments, Debtor shall dedicate to the plan proceeds in the estimated amount of $   from the sale of property known and designated as  . All sales shall be completed by  . If the property does not sell by the date specified, then the disposition of the property shall be as follows:

3.  Other payments from any source(s) (describe specifically) shall be paid to the Trustee as follows:

## 2.  SECURED CLAIMS.

### A.  <u>Pre-Confirmation Distributions.</u>   *Check One:*

☑   None.

### B.  <u>Mortgages (Including Claims Secured by Debtor's Principal Residence) and Other Direct Payments by Debtor</u>.   *Check One:*

☑   None.

### C.  <u>Arrears (Including, but not limited to, claims secured by Debtor's principal residence).</u>   *Check One:*

☑   None.

### D.  <u>Other secured claims (conduit payments and claims for which a § 506 valuation is not applicable, etc.)</u>   *Check One:*

☑   None.

### E.  <u>Secured claims for which a § 506 valuation is applicable.</u>   *Check One:*

☐   None.
      *If this is checked, the rest of § 2.E need not be completed or reproduced.*

☒   Claims listed in the subsection are debts secured by property not described in § 2.D of  this plan. These claims will be paid in the plan according to

3

modified terms, and liens retained until the earlier of the payment of the underlying debt determined under nonbankruptcy law or discharge under §1328 of the Code. The excess of the creditor's claim will be treated as an unsecured claim. Any claim listed as "$0.00" or "NO VALUE" in the "Modified Principal Balance" column below will be treated as an unsecured claim. The liens will be avoided or limited through the plan or Debtor will file an adversary or other action (select method in last column). To the extent not already determined, the amount, extent or validity of the allowed secured claim for each claim listed below will be determined by the court at the confirmation hearing. Unless otherwise ordered, if the claimant notifies the Trustee that the claim was paid, payments on the claim shall cease.

| Name of Creditor | Description of Collateral | Value of Collateral (Modified Principal) | Interest Rate | Total Payment | Plan, Adversary or Other Action |
|---|---|---|---|---|---|
| U.S. Bank Trust | 585-587 McKinley Street Hazleton, PA 18201-4009 | | | $68,694.84 | |
| | | | | | |
| | | | | | |

**F.** **Surrender of Collateral.** *Check One:*

☑ None.

**G.** **Lien Avoidance.** *Do not use for mortgages or for statutory liens, such as tax liens. Check One:*

☑ None.

## 3. PRIORITY CLAIMS.

### A. Administrative Claims

1. Trustee's Fees. Percentage fees payable to the Trustee will be paid at the rate fixed by the United States Trustee.

4

2.  <u>Attorney's fees</u>. Complete only one of the following options:

    a.  In addition to the retainer of $ 1,000.00 already paid by the Debtor, the amount of $ 3,500.00 in the plan. This represents the unpaid balance of the presumptively reasonable fee specified in L.B.R. 2016-2(c); or

    b.  $ per hour, with the hourly rate to be adjusted in accordance with the terms of the written fee agreement between the Debtor and the attorney. Payment of such lodestar compensation shall require a separate fee application with the compensation approved by the Court pursuant to L.B.R. 2016-2(b).

3.  Other. Other administrative claims not included in §§ 3.A.1 or 3.A.2 above. *Check one:*

    ☑ None.

**B. <u>Priority Claims (including certain Domestic Support Obligations).</u>**

Allowed unsecured claims entitled to priority under § 1322(a) will be paid in full unless modified under §9.

| Name of Creditor | Estimated Total Payment |
|---|---|
|  |  |
|  |  |
|  |  |

*C.* <u>**Domestic Support Obligations assigned to or owed to a governmental unit under 11 U.S.C. §507(a)(1)(B)**</u>. *Check one:*

    ☑ None.

**4. UNSECURED CLAIMS.**

**A. <u>Claims of Unsecured Nonpriority Creditors Specially Classified</u>.** *Check one:*

    ☑ None.

**B. <u>Remaining allowed unsecured claims will receive a pro-rata distribution of funds</u>**

**remaining after payment of other classes.**

5. **EXECUTORY CONTRACTS AND UNEXPIRED LEASES.** *Check one:*

    ☑ None.

6. **VESTING OF PROPERTY OF THE ESTATE.**

    **Property of the estate will vest in the Debtor upon**

    *Check the applicable line:*

        ☐ plan confirmation.
        ☐ entry of discharge.
        ☒ closing of case.

7. **DISCHARGE:** *(Check one)*

    ☒ The debtor will seek a discharge pursuant to § 1328(a).
    ☐ The debtor is not eligible for a discharge because the debtor has previously received a discharge described in § 1328(f).

8. **ORDER OF DISTRIBUTION:**

    If a pre-petition creditor files a secured, priority or specially classified claim after the bar date, the Trustee will treat the claim as allowed, subject to objection by the Debtor.

    Payments from the plan will be made by the Trustee in the following order:

    Level 1:

    Level 2:

    Level 3:

    Level 4:

    Level 5:

    Level 6:

    Level 7:

    Level 8:

*If the above Levels are filled in, the rest of § 8 need not be completed or reproduced.* If the above Levels are not filled-in, then the order of distribution of plan payments will be determined by the Trustee using the following as a guide:

Level 1: Adequate protection payments.
Level 2: Debtor's attorney's fees.
Level 3: Domestic Support Obligations.
Level 4: Priority claims, pro rata.
Level 5: Secured claims, pro rata.
Level 6: Specially classified unsecured claims.
Level 7: Timely filed general unsecured claims.
Level 8: Untimely filed general unsecured claims to which the Debtor has not objected.

## 9. NONSTANDARD PLAN PROVISIONS.

Include the additional provisions below or on an attachment. Any nonstandard provision placed elsewhere in the plan is void. (NOTE: The plan and any attachment must be filed as one document, not as a plan and exhibit.)

Dated: February 16, 2023                    /s/ Michael A. Cibik
                                            Attorney for Debtor

By filing this document, the debtor, if not represented by an attorney, or the Attorney for Debtor also certifies that this plan contains no nonstandard provisions other than those set out in § 9.

**United States Bankruptcy Court**
**Middle District Of Pennsylvania**

In re   Graham, Vincent

Debtor(s)

Case No.   5:23-bk-00162-MJC

Chapter   13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the following document(s):

**Chapter 13 Plan**

was(were) mailed to all persons in interest at the addresses set forth in the exhibit which is attached hereto, electronically or by first class mail, postage prepaid, on ___02/16/2023___.

Dated:   01/24/2023

/s/ Michael A. Cibik

Michael A. Cibik
Debtor or Debtor's(s') Counsel
Bar Number: 23110
Cibik Law, P.C.
1500 Walnut Street Suite 900
Philadelphia, PA 19102
Phone: (215) 735-1060
Email: mail@cibiklaw.com

**AcceptanceNOW**
Attn: Bankruptcy 5501 Headquarters Drive
Plano, TX 75024

**Aspire Credit Card**
Attn: Bankruptcy
PO Box 105555
Atlanta, GA 30348-5555

**Cibik Law, P.C.**
1500 Walnut Street Suite 900
Philadelphia, PA 19102

**City of Hazleton**
40 N Church St
Hazleton, PA 18201-5862

**Comenity/Burlington**
Attn: Bankruptcy
PO Box 182125
Columbus, OH 43218

**ComenityCapital/Boscov**
Attn: Bankruptcy Dept
PO Box 182125
Columbus, OH 43218

**First Premier Bank**
Attn: Bankruptcy
PO Box 5524
Sioux Falls, SD 57117

**Greater Hazleton Joint Sewer Authority**
PO Box 651
Hazleton, PA 18201-0651

**Hazleton Area School District**
1515 W 23rd St
Hazle Townshp, PA 18202-1647

**Internal Revenue Service**
Centralized Insolvency Operation
PO Box 7346
Philadelphia, PA 19101-7346

**Luzerne County Tax Claim Bureau**
c/o Elite Revenue Solutions
200 North River Street
Wilkes Barre, PA 18711

**Pennsylvania Attorney General**
16th Floor, Strawberry Square
Harrisburg, PA 17120

Page 1 of 2

**Pennsylvania Department of Revenue**
Bankruptcy Division
Po Box 280946
Harrisburg, PA 17128-0946

**Pennsylvania Office of General Counsel**
333 Market St Fl 17
Harrisburg, PA 17101-2210

**U.S. Attorney, Middle District of Pa.**
235 N Washington Ave Ste 311
Scranton, PA 18503-1533

**U.S. Bank Trust N.A.**

800 Nicollet Mall
Minneapolis, MN 55402-7000

**U.S. Department of Justice**
950 Pennsylvania Ave NW
Washington, DC 20530-0009

| Debtor | Graham |
|---|---|
| Account # | ■■■■ |
| Case # | 23-00162 |
| Filing Date | 1/26/2023 |
| First Post Due Date | 2/1/2023 |
| Post Admin Claim? | No |
| Post Admin Start | |
| As of | |
| Loan Type | |

| Payment Changes | Eff Date | P & I | Escrow | Other | Total |
|---|---|---|---|---|---|
| POC | 2/1/2023 | $ 3,138.94 | $ 554.23 | $ - | $ 3,693.17 |
| Change #1 | | $ - | $ - | $ - | $ - |
| Change #2 | | $ - | $ - | $ - | $ - |
| Change #3 | | $ - | $ - | $ - | $ - |
| Change #4 | | $ - | $ - | $ - | $ - |
| Change #5 | | $ - | $ - | $ - | $ - |
| Change #6 | | $ - | $ - | $ - | $ - |
| Change #7 | | $ - | $ - | $ - | $ - |
| Change #8 | | $ - | $ - | $ - | $ - |

| | Amounts Due | | | Date Received | Post Funds Received | Difference | | Payments Due | Pymt Amts Due |
|---|---|---|---|---|---|---|---|---|---|
| | P & I | Escrow | Total | | | | | | |
| Feb-23 | 3138.94 | 554.23 | 3693.17 | | | 3693.17 | 0.00 | 2/1/2023 | 3693.17 |
| Mar-23 | 3138.94 | 554.23 | 3693.17 | | | 3693.17 | 0.00 | 3/1/2023 | 3693.17 |
| Apr-23 | 3138.94 | 554.23 | 3693.17 | | | 3693.17 | 0.00 | 4/1/2023 | 3693.17 |
| May-23 | 3138.94 | 554.23 | 3693.17 | | | 3693.17 | 0.00 | 5/1/2023 | 3693.17 |
| Jun-23 | 3138.94 | 554.23 | 3693.17 | | | 3693.17 | 0.00 | 6/1/2023 | 3693.17 |
| Jul-23 | 3138.94 | 554.23 | 3693.17 | | | 3693.17 | 0.00 | 7/1/2023 | 3693.17 |
| Aug-23 | 3138.94 | 554.23 | 3693.17 | | | 3693.17 | 0.00 | 8/1/2023 | 3693.17 |
| Sep-23 | 3138.94 | 554.23 | 3693.17 | | | 3693.17 | 0.00 | 9/1/2023 | 3693.17 |
| Oct-23 | 3138.94 | 554.23 | 3693.17 | | | 3693.17 | 0.00 | 10/1/2023 | 3693.17 |
| | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | | |
| | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | | |
| | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | | |
| | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | | |
| | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | | |
| | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | | |
| | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | | |
| | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | | |
| | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | | |
| | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | | |
| | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | | |
| | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | | |
| | $ 28,250.46 | $ 4,988.07 | $ 33,238.53 | Amount Paid | $ - | $ 33,238.53 | $ - | 2/1/2023 | $ 33,238.53 |

Post Petition Due Date   2/1/2023
Amount Due   $ 33,238.53
Debtor Suspense   $ -

**OUTSTANDING Costs and FEES**

| Date | Amount | Description |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

EXHIBIT E



PHONE NUMBER:     (800) 365-7107
FAX NUMBER:     (866) 467-1187
E-MAIL: LOANSERVICING@SHELLPOINTMTG.COM

October 24, 2023

Estate of Graham, Roberta
587 MCKINLEY ST

HAZLETON, PA  18201

Payoff figures have been requested on the loan for the borrower and property described below.

Loan ID: ████████
Roberta Estate of Graham
283 SHEPERD AVE
BROOKLYN, NY   11208
Loan Type: Conventional

When remitting funds, please use our loan number to ensure proper posting and provide us with the borrower's forwarding address.  Funds received in this office after 3:00 pm Eastern Time will be processed on the next business day, with interest charged to that date.

This payoff quote is effective  10/24/2023  and is good through   10/24/2023 . Any transactions that occur on or after the effective date may change the payoff amount.

| | |
|---|---|
| **Projected Payoff Date** | **10/24/2023** |
| Principal Balance | $466,803.85 |
| Interest To 10/24/2023 | $579,632.51 |
| Fees | $34,835.88 |
| Prepayment Penalty | $0.00 |
| Release Fees | $0.00 |
| Funds owed by borrower | $99,135.15 |
| Funds owed to borrower | ($4,582.02) |
| **Total Payoff** | **$1,175,825.37** |
| Per diem | $95.57 |

The next payment due date is 11/1/2007. Payments are made by Billing on a Monthly basis. The interest rate for this payment is 7.90000% and the P & I payment is 3,138.94.  The taxes are next due 12/31/2023.
**PLEASE CALL THE NUMBER LISTED ON THIS FORM TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

Mailing Address
Shellpoint Mortgage Servicing
75 Beattie Place
Suite LL202
Greenville, SC 29601



PHONE NUMBER:     (800) 365-7107
FAX NUMBER:     (866) 467-1187
E-MAIL: LOANSERVICING@SHELLPOINTMTG.COM

Payoff Policy Details:

1.  When remitting funds, please use our loan number to ensure proper posting and provide us with the borrower's forwarding address .

2.  We only accept funds on business days, which are Monday through Friday . Any funds received will be posted with the date received .

3.  Continue making your monthly payments until you send us the amount needed to pay off your mortgage to avoid late charges or adverse credit reporting .

    a.  If you currently have your monthly payment set up on automatic withdrawal (ACH), or have any pending payments set up, drafting will continue until the loan is paid in full, at which time future drafts will automatically be cancelled .

4.  **If you are due for a refund,** that refund will be issued by check on day 20 after the date the loan is paid in full .

    a.  Any refunds will be sent to the mailing address we have on record for this account . If your mailing address is changing, you must contact us to provide a new address .

5.  The payoff total quoted above is valid through the stated good through date . Any transactions that occur on or after the issue date of this payoff statement may change the total payoff amount .

6.  The payoff amount is subject to our final verification once we receive the payoff funds . We reserve the right, except where prohibited, to correct any portion of this statement at any time .

7.  **If the amount we receive is insufficient to pay off this loan, we may use funds in the escrow balance to cover the short payoff .**

    a.  **If the escrow balance is insufficient to pay off the total amount owed, we will attempt to contact you or the issuing agent. If we are unable reach you or the issuing agent, we will return the payoff funds and you will need to request a new quote .**

8.  We will pay all escrowed items, including hazard and flood insurance and taxes, from your escrow account as normally scheduled up to the date we receive the payoff funds .

    a.  You or your closing agent (if applicable) will need to request a refund from the appropriate tax authority or insurance company for any duplicate tax or insurance payments .

    b.  Any existing lender-placed property insurance premium will be cancelled upon account payoff, and any related unearned premiums will be refunded .

9.  Once the loan is paid in full, the appropriate security instrument will be released as follows :

    a.  Real Property: a Release is recorded with your county and a copy will be sent to you once returned from the county, usually within 30-90 days, dependent upon state/county processing times .

    b.  Personal Property: a Tile Lien Cancellation or UCC3 Termination will be sent to the mailing address we have on record for this account within 30-90 days .



PHONE NUMBER: (800) 365-7107
FAX NUMBER: (866) 467-1187
E-MAIL: LOANSERVICING@SHELLPOINTMTG.COM

Wiring Instructions - **\* You must include the "Reference" information listed below if wiring funds \***

Bank Name: CITI Bank
ABA Number: ██████
Account Number: ██████
Account Name: Shellpoint Mortgage Servicing
Reference: ██████

**"BEWARE OF SCAMS - WE WILL NEVER ASK YOU TO USE DIFFERENT WIRING INSTRUCTIONS - IF YOU RECEIVE ANY REQUEST TO USE INSTRUCTIONS DIFFERENT THAN THESE PLEASE CALL THE TELEPHONE NUMBER LISTED AT THE TOP THIS FORM TO CONFIRM NEXT STEPS ."**

**Roberta Estate of Graham  -  Loan ID ██████3**

## FEE DETAILS

| Description | Amount |
| --- | --- |
| Late Charge Payment | $2,448.42 |
| BPO/Aprsl Cost | $1,820.00 |
| Title Cost | $1,336.82 |
| Recording Cost | $35.00 |
| Property Inspection | $94.50 |
| Attorney Cost | $525.00 |
| Court Costs | $73.55 |
| Certified Mail Cost | $8.40 |
| FC Costs | $516.93 |
| Attorney Cost | $22,768.47 |
| FC Costs | $4,653.79 |
| Prior Servicer Cost | $100.00 |
| Default Related Cost | $455.00 |
| | **$34,835.88** |



MONDAY - FRIDAY:    8AM - 9PM ET
SATURDAY:    10AM - 2PM ET

PHONE NUMBER:    (800) 365-7107
FAX NUMBER:    (866) 467-1187
E-MAIL: LOANSERVICING@SHELLPOINTMTG.COM

## **FUNDS OWED BY BORROWER DETAILS**

| Description | Amount |
|---|---|
| Escrow Only Payment | $98,944.65 |
| Lender Placed Hazard Due | $190.50 |
| | **$99,135.15** |